IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| DEVAN WILLIAMS,<br><br>*Plaintiff*,<br><br>v.<br><br>BIBB COUNTY (A POLITICAL SUBDIVISION OF THE STATE OF GEORGIA) d/b/a Bibb County Sheriff's Office; BIBB COUNTY BOARD OF COMMISSIONERS; Corporal ALLEN KENDRICK, individually and as an employee and agent of Bibb County Sheriff's Office; Lt. MICHAEL KENIREY, individually and as an employee and agent of Bibb County Sheriff's Office; Deputy OMAR SANDERS, individually and as an employee and agent of Bibb County Sheriff's Office; JOHN DOES 1-10; and XYZ CORPORATIONS 1-3,<br><br>*Defendants*. | CIVIL ACTION NO.<br><br>5:17-cv-00267-TES |

**ORDER GRANTING DEFENDANTS MACON-BIBB
COUNTY, KENDRICK, KENIREY, AND SANDERS'
MOTION FOR SUMMARY JUDGMENT**

Plaintiff brought the instant action pursuant to 42 U.S.C. § 1983 and Georgia law against the above-captioned Defendants, alleging claims for excessive force in violation of the Fourth Amendment, municipal liability for failure to train, deliberate indifference

to a serious medical need in violation of the Eighth Amendment, negligence, and "derivative liability." Defendants Macon-Bibb County (listed in the caption as "Bibb County (a Political Subdivision of the State of Georgia) d/b/a Bibb County Sheriff's Office" and "Bibb County Board of Commissioners"), Corporal Allen Kendrick, Lieutenant Michael Kenirey, and Deputy Omar Sanders (collectively "Defendants") move for summary judgment on the claims against them. Upon thorough review and for the reasons that follow, their Motion for Summary Judgment [Doc. 18] is **GRANTED**.[1]

## FACTUAL BACKGROUND

In May 2015, the Bibb County Sheriff's Office investigated a gang-related armed robbery in which Plaintiff, Devan Williams, was identified by the victim as the main assailant. [Doc. 18-2, Witherspoon Affid., ¶¶ 4, 8]. On June 1, 2015, a Bibb County magistrate issued warrants for Plaintiff's arrest on charges of aggravated assault, armed robbery, kidnapping, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony. [*Id.* at ¶ 8; *Id.* at pp. 12-22]. The next day, the Bibb County Sheriff's Office organized a task force to execute a search warrant on a property believed to be connected to the robbery. [*Id.* at ¶¶ 6, 7]. Just prior to the execution of the search warrant, Deputy Witherspoon, an investigator involved with the armed

---

[1] Plaintiff also brought suit against ten John Doe defendants and one unnamed corporation. Because Plaintiff never amended his Complaint to identify these defendants and because they have not been served, the Court lacks jurisdiction over them, and the claims against them are **DISMISSED without prejudice**. *See Slaughter v. City of Unadilla*, No. 5:06-cv-187 (CAR), 2008 WL 345794, at *1, 3 (M.D. Ga. Feb. 5, 2008).

robbery case, witnessed Plaintiff standing near the search warrant target location. [*Id.* at ¶ 8]. Deputy Witherspoon briefed the task force on the alleged offenses and informed the group that Plaintiff might be armed. [*Id.*].

Lt. Michael Kenirey, Cpl. Allen Kendrick, and Deputy Omar Sanders, Bibb County Sheriff's Office employees and Defendants in this action, were part of the task force and accompanied Deputy Witherspoon in the execution of the search warrant on June 2, 2015. [Doc. 18-3, Kenirey Affid., ¶ 5; Doc. 18-4, Kendrick Affid., ¶ 6; Doc. 18-5, Sanders Affid., ¶ 6]. When they arrived at the search warrant target location, Deputy Sanders saw Plaintiff standing in front of a public housing complex near the target location. [Doc. 18-5, Sanders Affid., ¶ 7]. After exiting Lt. Kenirey's patrol car, Officer Sanders announced, "Bibb County Sheriff's Office," and Plaintiff began to run. [*Id.*].

Deputy Sanders ran after Plaintiff while Lt. Kenirey followed in his patrol car and Cpl. Kendrick ran around buildings in the public housing complex in an attempt to cut Plaintiff off. [*Id.* at ¶ 8; Doc. 18-3, ¶ 9; Doc. 18-4, ¶ 7]. As he ran, Plaintiff ignored Deputy Sanders' verbal commands to stop, and Deputy Sanders yelled, "Taser, Taser, Taser, Taser!" [Doc. 18-5, ¶ 8]. After witnessing Plaintiff throw a clear object from his left pocket, Deputy Sanders deployed his Taser, but he missed. [*Id.*].

Plaintiff continued to run, and Deputy Sanders saw him reach toward his waist with his left hand and remembered Deputy Witherspoon's warnings that Plaintiff may be armed. [*Id.*]. After again yelling for Plaintiff to stop, Deputy Sanders deployed his

3

Taser a second time, this time hitting Plaintiff with one prong in the back and one in the back of the head. [*Id.* at ¶¶ 8, 9]. As he seized up from the shock of the Taser, Plaintiff fell down a set of stairs leading from a walkway in the public housing complex to a parking lot and injured his face. [*Id.* at ¶¶ 9, 12]. Responding officers handcuffed Plaintiff and removed a handgun from Plaintiff's waistband. [*Id.* at ¶¶ 11, 12].

Lt. Kenirey heard Deputy Sanders call out over the radio that he apprehended Plaintiff. [Doc. 18-3, ¶ 9]. When he located Deputy Sanders and Plaintiff, Lt. Kenirey saw that Plaintiff was lying on the ground, handcuffed behind his back, and directed other officers on the scene to stand him up to avoid positional asphyxiation. [Doc. 18-3, ¶ 10].

Given the extent of Plaintiff's injuries, the Bibb County Sheriff's Office Internal Affairs Division conducted an internal investigation into Deputy Sanders' use of force against Plaintiff to determine if Deputy Sanders violated any policies. [Doc. 18-1, Davis Affid., ¶¶ 6, 7]. One such policy relating to the use of tasers states, "The TASER is not intended for use on any subject where severe injury would result in a fall from significant heights or into a hazardous environment unless deadly force is the only other option." [Doc. 22-1, p. 63]. It also states,

> The TASER may be used only when necessary to overcome actual or threatened physical resistance . . . where it is reasonably believed that the use of a less obtrusive method would either allow the individual to escape, or would expose the deputy or others to physical injury. The act of fleeing from a deputy does not in itself justify the use of the TASER."

[*Id.* at p. 64]. Finally, the taser policy prohibits deputies from "purposely" firing the taser "at the head, throat or genital area" or a person's eyes. [*Id.* at p. 65].

Bibb County Sheriff David Davis and Chief Deputy Russell Nelson reviewed the final investigation report, and Sheriff Davis averred the following in an affidavit in support of Defendants' Motion for Summary Judgment:

> Upon review of the investigative summary (report) and of the documents appended to the report on Internal Affairs case number IA15070BP by then-Chief Deputy Nelson and me, Investigator Sanders was not found to have violated any [Bibb County Sheriff's Office] policy in connection with the June 2, 2015 arrest of [Plaintiff]. Accordingly, Investigator Sanders did not receive any disciplinary action in connection with the June 2, 2015 arrest of [Plaintiff]. Certainly it was not ideal that the effects of the taser resulted in [Plaintiff's] falling down a set of concrete steps and sustaining the injuries he suffered at the time of his June 2, 2015 arrest. Nor for that matter was it ideal for Investigator Sanders to have deployed his taser in an effort to end [Plaintiff's] flight and attempt to evade arrest while [Plaintiff] was running in the direction of a set of steps—though a short flight of steps like those at the scene of [Plaintiff's] apprehension and arrest was not a "great height" within the meaning of the [Bibb County Sheriff's Office] Taser (Conducted Electrical Weapon) Policy or of the [Bibb County Sheriff's Office] training Division's taser training course and certification for taser carry and potential use. Given the totality of the circumstances surrounding [Plaintiff's] apprehension and arrest, then-Chief Deputy Nelson and I found no policy violation or improper conduct on the part of Investigator Sanders in connection with such apprehension and arrest.

[*Id.* at ¶ 16].

Plaintiff now alleges that Lt. Kenirey, Cpl. Kendrick, and Deputy Sanders used excessive force against him during his arrest and were negligent in violation of Georgia law. He further alleges that the Bibb County Sheriff's Office failed to train its police

officers, including Deputy Sanders, in the "proper, safe, and lawful use of Taser devices," and seeks to hold the Sheriff's Office derivatively liable for its officers' alleged negligence. For the reasons that follow, Plaintiff's claims fail, and Defendants are entitled to summary judgment.

## DISCUSSION

### A. Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As to issues for which the movant would bear the burden of proof at trial, the "movant must affirmatively show the absence of a genuine issue of material fact and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all of the essential elements of its case." *Landolfi v. City of Melbourne*, 515 F. App'x 832, 834 (11th Cir. 2013) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)).

As to issues for which the non-movant would bear the burden of proof at trial, the movant may (1) simply point out an absence of evidence to support the non-moving party's case or (2) provide "affirmative evidence demonstrating that the [non-movant] will be unable to prove its case at trial." *United States v. Four Parcels of Real Prop. in Greene*

6

*& Tuscaloosa Ctys.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant satisfies its burden, the burden shifts to the non-movant, who must "go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick*, 2 F.3d at 1115–17). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)).

### B. <u>Plaintiff's Section 1983 Excessive Force Claim against Kenirey, Kendrick, and Sanders</u>

First, Plaintiff alleges that Lt. Kenirey, Cpl. Kendrick, and Deputy Sanders used excessive force against him during the arrest. Defendants contend that they are entitled to qualified immunity on this claim. Qualified immunity protects public officers acting within the scope of their discretionary authority as long as they do not violate clearly established law. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The burden of proof for a qualified immunity defense initially rests with the officer, who must show that he was "acting within the scope of his discretionary authority when the alleged wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). In this case, neither party disputes that Defendants acted within their discretionary authority during Plaintiff's apprehension and arrest. Therefore, the burden shifts to Plaintiff to show that immunity does not apply.

7

*Id.* Plaintiff satisfies this burden if the facts, taken in the light most favorable to him, show that Officer Danese's conduct violated a clearly established constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A plaintiff may satisfy this burden in one of three ways: (1) "by pointing to a materially similar case decided by the Supreme Court," the Eleventh Circuit Court of Appeals, or the Georgia Supreme Court; (2) by showing that a "broader, clearly established principle" that is "established with obvious clarity" and that controls the "novel facts of the situation"; or (3) by showing that the officers' conduct in this case "so obviously violated the constitution that prior case law is unnecessary." *Terrell v. Smith*, 668 F.3d 1244, 1255-56 (11th Cir. 2012) (internal citations omitted).

In this case, Plaintiff does neither of these; he merely states, quite conclusively, that "Plaintiff has a 'clearly established right' to not be unnecessarily brutalized by officers of the law, acting out of raw emotion rather than professional training. Plaintiff has a clearly established right to expect that sheriff's deputies would follow their own procedures." [Doc. 20, p. 10]. However, Plaintiff fails to cite a single materially similar case in support of his argument.[2] Moreover, the Court does not find that an unforeseen injury incidental to a lawful use of force[3] constitutes a violation at all, let alone one that is "established

---

[2] At the beginning of his argument, Plaintiff cites to *Graham v. Connor*, 490 U.S. 386, 397 (1989), for the general proposition that there is a question of fact as to "whether the force used to detain and arrest Plaintiff was 'reasonable' in light of the facts and circumstances." [Doc. 20, p. 8]. But *Graham* does not involve the use of a taser or a suspect who fled from officers.

[3] Plaintiff offers no evidence to refute Deputy Sanders' sworn statement that he saw Plaintiff reach toward his waistband and made the reasonable inference that Plaintiff may be reaching for a weapon. [Doc. 18-5, ¶ 8]. It is clearly established that an officer may use a taser to aid in the arrest of a suspect who is "hostile,

8

with obvious clarity" or that "so obviously violated the constitution." *Terrell*, 668 F.3d 1244.

To the contrary, it is *not* clearly established that a deviation from a department's standard operating procedures constitutes an actionable constitutional violation. Even so, Plaintiff offers no evidence that Kenirey, Kendrick, and/or Sanders actually violated the Bibb County Sheriff's Office standard operating procedures. For example, Plaintiff offers no evidence of the height of the stairs he fell down after being tased, which would be useful in determining if Plaintiff fell from a "significant height." [Doc. 22-1, p. 63]. Plaintiff offers no evidence that Deputy Sanders "purposefully" aimed the taser at Plaintiff's head. [*Id.* at p. 65]. And Plaintiff offers no evidence that Deputy Sanders did not reasonably believe that "the use of a less obtrusive method would either allow the individual to escape, or would expose the deputy or others to physical injury." [*Id.* at p. 64].[4] At best, Plaintiff presents unsworn statements he made during the internal

---

belligerent, and uncooperative" and where there was a risk of potential harm to the officer. *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004); *see also Lee v. Ferraro*, 284 F.3d 1188, 1197-98 (11th Cir. 2002) (when considering a Fourth Amendment excessive force claim, "a court must evaluate a number of factors, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.") (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). There is also no evidence that Deputy Sanders knew that there was a risk of Plaintiff falling down a set of stairs. *Cf. Harper v. Perkins*, 459 F. App'x 822, 826-27 (11th Cir. 2012) (denying qualified immunity where officers knew a substantial risk of harm existed when they tased a suspect who was standing in a tree, was not attempting to flee, had his hands up in compliance with the officers' commands, and posed no threat.). Therefore, based on the evidence in the record, the use of force in this case was lawful and proportionate.

[4] In fact, the undisputed evidence shows Deputy Sanders believed that Plaintiff was reaching for a weapon during the chase. [Doc. 18-5, ¶ 8].

investigation process that Deputy Sanders did not identify himself or yell anything during the chase and apprehension. [Doc. 22-1, pp. 48-56]. However, "[u]nsworn statements do not meet the requirements of [Federal Rule of Civil Procedure 56(c)] and cannot be considered by a district court in ruling on a summary judgment motion." *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970)).[5]

Plaintiff's arguments that Sheriff Davis essentially admitted liability in his affidavit when he said that this incident was "not ideal" also fail. [Doc. 18-1, Davis Affid., ¶ 16]. "Not ideal" is not synonymous with "unlawful," just as any accident may be "unfortunate" without being criminal. In this case, there is no evidence that Deputy Sanders acted unlawfully when he tased Plaintiff, even if it would have likely been better (i.e., more ideal) for all involved if Plaintiff submitted to arrest without the need for the use of a taser. Thus, Plaintiff's argument is unpersuasive.

---

[5] In stark contrast to the requirements of Rule 56, Plaintiff failed to offer a single affidavit to support his arguments. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials . . .); Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (Once the movant satisfies its burden, the burden shifts to the non-movant, who must "go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists.").

Accordingly, Plaintiff has failed to carry his burden in response to Defendants' assertion of qualified immunity, and Lt. Kenirey, Cpl. Kendrick, and Deputy Sanders are therefore entitled to summary judgment on Plaintiff's Section 1983 claims.

C. **Plaintiff's Section 1983 *Monell* Liability Claims against the County and Lt. Kenirey, Cpl. Kendrick, and Deputy Sanders in Their Official Capacities**

Plaintiff asserts claims against Lt. Kenirey, Cpl. Kendrick, and Deputy Sanders in their official capacities, which are, in effect, claims against their employer, the Bibb County Sheriff's Office. *See Kentucky v. Graham*, 473 U.S. 159 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Plaintiff also asserts a claim against Bibb County for "accepting responsibility for" Lt. Kenirey, Cpl. Kendrick, and Deputy Sanders' conduct. [Doc. 20, p. 4].

In the context of a Section 1983 action, there can be no liability for a county-employer on the basis of respondeat superior unless the employee's acts were committed in accordance with the county's policies or customs. *Monell*, 436 U.S. at 694 ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."). There can be liability under *Monell* when "authorized policymakers approve a subordinate's decision

and the basis for it," because "their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

Plaintiff claims that the officers violated his rights and that the Bibb County Sheriff's Office's "custom of ignoring the letter of their own rules" (i.e., the standard operating procedures) allowed for these violations. In addition to there being no evidence of such a custom, the Court has already found that the officers did not commit any constitutional violations in this case. Therefore, the County and the officers, in their official capacities, are entitled to summary judgment on this claim. *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) ("[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.").[6]

---

[6] Plaintiff also brought an Eighth Amendment deliberate indifference to a serious medical need claim against Defendants. Defendants moved for summary judgment on this claim, arguing that there is no evidence that the County or its employees were deliberately indifferent to Plaintiff's medical needs after his arrest. Plaintiff failed to respond to those arguments and thus failed to carry his burden on summary judgment. The Court therefore **GRANTS** Defendants' Motion for Summary Judgment on this claim. *See Case v. Eslinger*, 555 F.3d 1317, 1328 (11th Cir. 2009) ("When a party moves for final, not partial, summary judgment, we have stated that it becomes incumbent upon the nonmovant to respond by, at the very least, raising in their opposition papers any and all arguments or defenses they felt precluded judgment in the moving party's favor. A party cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions.") (quoting *Johnson v. Board of Regents*, 263 F.3d 1234, 1264 (11th Cir. 2001)). *See also Gary v. City of Warner Robins*, No. 5:16-cv-151(TES), 2018 WL 3825220, at *6 (M.D. Ga. Aug. 10, 2018) ("When a non-moving party fails to address particular claims in the moving party's motion for summary judgment but responds to other arguments, the non-moving party abandons these claims.").

**D. Plaintiff's State-Law Negligence Claim against Kendrick, Kenirey, and Sanders**

In addition to his Section 1983 claims, Plaintiff brought state-law negligence claims against Lt. Kenirey, Cpl. Kendrick, and Deputy Sanders in their *official* capacities and against the County under the theory of respondeat superior. Defendants argue that they are entitled to sovereign immunity under Georgia law. Under the Georgia Constitution, sovereign immunity extends to "'the state and all of its departments and agencies,' which includes counties." *Dekalb State Court Prob. Dep't v. Currid*, 653 S.E.2d 90, 92-3 (Ga. Ct. App. 2007) (quoting Ga. Const. of 1983, Art. I, Sec. II, Par. IX(e)). Plaintiff claims that Ga. Code Ann. § 50-21-23[7] of the Georgia Tort Claims Act waives sovereign immunity for torts committed by state officials in the scope of their employment. However, the waiver contained in that provision of the Georgia Tort Claims Act does not apply to counties. *See* Ga. Code Ann. § 50-21-22(5) ("'State' means the State of Georgia and any of its offices . . . but does not include counties . . . ."); *Woodard v. Laurens Cty.*, 456 S.E.2d 581, 582 (Ga. 1995) ("[T]he waiver of sovereign immunity afforded by [the Georgia Tort Claims Act, Ga. Code Ann. §§ 50-21-20 et seq.] does not extend to a county.").

In the absence of evidence to establish a waiver of sovereign immunity, Plaintiff's state-law claims against the County are barred. Likewise, Plaintiff's claims against Lt.

---

[7] Ga. Code Ann. § 50-21-23(a) states, "The state waives its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment and shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances . . . ."

13

Kenirey, Cpl. Kendrick, and Deputy Sanders in their official capacities are also barred by sovereign immunity. *See Ratliff v. McDonald*, 756 S.E.2d 569, 574 (Ga. Ct. App. 2014).

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Summary Judgment [Doc. 18] and **DISMISSES** this case.

**SO ORDERED**, this 25th day of October, 2018.

<u>S/ Tilman E. Self, III</u>
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**